MAINE SUPREME JUDICIAL COURT                     Reporter of Decisions
Decision:     2020 ME 100
Docket:       BCD-19-324
Submitted
  On Briefs:  April 14, 2020
Decided:      July 21, 2020

Panel:        MEAD, GORMAN, JABAR, and HUMPHREY, JJ, and HJELM, A.R.J.

PILOT POINT, LLC, et al.

v.

TOWN OF CAPE ELIZABETH

HUMPHREY, J.

[¶1]  Pilot Point[1] appeals from a judgment entered in the Business and Consumer Docket (*Murphy, J.*) concluding, on the Town's motion for judgment as a matter of law, *see* M.R. Civ. P. 50(d), that its proffered evidence was insufficient to support a finding that the Town of Cape Elizabeth's right to accept the "incipient dedication"[2] of a particular portion of land lapsed at

---

[1]  The plaintiffs/appellants are Pilot Point, LLC, David Leopold, Kara Leopold, Andrew Sommer, Susan Ross, Stewart Wooden, and Julie Wooden.  Imad Khalidi, Hulda Khalidi, and Rock Dam Development, LLC, were also at one point named plaintiffs in this action, but are not parties to this appeal.  Because the plaintiffs/appellants have acted together at all stages of this matter, we refer to them collectively as "Pilot Point."  Where "Pilot Point, LLC," appears in this decision, it refers to that entity only and not to all plaintiffs/appellants.  The collective Pilot Point plaintiffs/appellants and the individual entity Pilot Point, LLC, are not to be confused with the "Pilot Point Section" of Surf Side Avenue, the disputed area of land in this case.

[2]  When a developer of a subdivision records a deed with a proposed, unaccepted way, the developer is said to have made an "incipient dedication" of the proposed way for public use.  *See, e.g., Ocean Point Colony Trust, Inc. v. Town of Boothbay*, 1999 ME 152, ¶¶ 4-5, 7, 739 A.2d 382.

common law. In addition, before trial, the court dismissed without prejudice as unripe the remaining count of Pilot Point's complaint, *see, e.g., Clark v. Hancock Cty. Comm'rs*, 2014 ME 33, ¶ 8, 87 A.3d 712, which sought a declaratory judgment regarding the scope of the Town's development rights should it ever accept the incipient dedication. *See Blanchard v. Town of Bar Harbor*, 2019 ME 168, ¶¶ 16-22, 221 A.3d 554. We affirm the judgment.

## I.  BACKGROUND

[¶2]  The following facts, which are not in dispute, were found by the trial court and are supported by the record. Surf Side Avenue is a proposed, unaccepted way, or "paper street," in the Town of Cape Elizabeth. The central dispute is whether the Town's right to accept a portion of Surf Side Avenue, referred to as the "Pilot Point Section," lapsed at common law. *See Ocean Point Colony Trust, Inc. v. Town of Boothbay*, 1999 ME 152, ¶¶ 2, 8-9, 739 A.2d 382.

[¶3]  The Shore Acres Land Company recorded the Shore Acres subdivision plan (the Plan) in the Cumberland County Registry of Deeds on April 10, 1911. The Plan shows Surf Side Avenue running northeasterly along the southern border of the subdivision, bordered to the south by the Atlantic Ocean and to the north by subdivision lots 3 through 10 on the paper street's western branch and lots 44 through 47 on its eastern branch. The western

branch of Surf Side Avenue is the "Pilot Point Section," and, on the Plan, appears to be the only route of access to lots 3 through 10. These lots were later merged with the corresponding lots directly to their north (labeled 11 through 18 on the Plan), renumbered 69, 70, 71, 72, 73, 74A, and 74B, and are now accessible via Pilot Point Road.[3]

[¶4] The Town holds no fee interest in any part of Surf Side Avenue, has never accepted public rights over the Pilot Point Section, and has never developed it as a road or other public way. The current owners of several lots adjacent to the Pilot Point Section, and their predecessors-in-interest, have essentially used Surf Side Avenue as their back yards and engaged in some development of the Pilot Point Section where it abuts their respective lots.[4]

[¶5] On September 8, 1997, the Town Council voted to extend the Town's right to accept the incipient dedication of "all proposed, unaccepted

---

[3] According to the Plan, Pilot Point Road was originally named Oak Grove Road. Pilot Point Road, not central to this dispute, abuts the relevant lots to their north and should not be confused with the Pilot Point Section of Surf Side Avenue, which sits to the south of the relevant lots between them and the Atlantic Ocean.

[4] Specifically, Stewart Wooden and Julie Wooden own lots 67 and 68, and they have a flagpole and a subgrade irrigation system in the Pilot Point Section abutting their lots. Andrew Sommer and Susan Ross own lot 69, adjacent to which is a stone walkway, brick patio, renovated open deck, bench, maintained ground cover, subgrade drainage system, and cement tank in the Pilot Point Section. Pilot Point, LLC, owns lot 70, adjacent to which is a bench and maintained ground cover in the Pilot Point Section. David Leopold and Kara Leopold own lot 71, adjacent to which is a stairway, fence, and irrigation system within the Pilot Point Section. There is also evidence of obstructions in the Pilot Point Section where it abuts lots 72, 74A, and 74B, such as a stone wall, lawns, gardens, and a wrought-iron fence. The owners of those lots are not parties to this appeal.

ways within the Town of Cape Elizabeth," except for a number of such ways that are not at issue here, for a period of twenty years. *See* 23 M.R.S. § 3032 (2020); *Ocean Point Colony Trust, Inc.*, 1999 ME 152, ¶ 2, 739 A.2d 382. Following that vote, on September 11, 1997, the Town recorded the statutorily authorized notice in the Registry of Deeds. *See* 23 M.R.S. § 3032. The Town Council voted to extend its right to accept Surf Side Avenue and other paper streets within the Town for a second twenty-year period on October 5, 2016, and again filed a notice in the Registry of Deeds. *See id.*

[¶6]  This action began on January 26, 2018, with the filing of two independent complaints,[5] each pleading the same two counts. Count 1 of each complaint sought a declaratory judgment that the Town's right to accept the incipient dedication of the Pilot Point Section had lapsed at common law. Count 2 of each complaint sought a declaratory judgment that even if the Town's right to accept the incipient dedication of the Pilot Point Section had not lapsed, the Town's right was limited by the scope of the original dedication, and it could not change the location, construction, or use of the Pilot Point Section to develop it as a public trail or other recreational space.

---

[5]  One complaint was brought by Pilot Point, LLC, and the other was brought by Imad and Hulda Khalidi, David and Kara Leopold, Rock Dam Development, LLC, Andrew Sommer and Susan Ross, and Stewart and Julie Wooden. *See supra* n.1.

The court (Cumberland County, *Warren, J.*) consolidated the complaints, and the case was transferred to the Business and Consumer Docket (*Murphy, J.*).

[¶7]  Pilot Point and the Town each moved for summary judgment on both counts, and, after a hearing, the court denied both parties' motions for summary judgment on Count 1 because there were unresolved factual issues bearing on whether the Town's right to accept the incipient dedication had lapsed.[6]  The court also dismissed Count 2 without prejudice as unripe for judicial review.  *See, e.g., Clark*, 2014 ME 33, ¶ 8, 87 A.3d 712.

[¶8]  Before trial was held on Count 1, Pilot Point filed several motions in limine seeking pretrial determinations expressly permitting the introduction of certain evidence.[7]  The court granted in part Pilot Point's motion related to evidence of the lot owners' adverse use of the Pilot Point Section that had been ongoing for less than twenty years before 1997, stating that "[p]laintiffs will be able to introduce any evidence of inconsistent uses up until the date that the Town . . . filed its [n]otice, even if they were not present

---

[6]  The Town filed a motion for reconsideration of the court's order on the cross-motions for summary judgment with respect to Count 1 and Pilot Point filed a motion to alter or amend the court's order on the cross-motions for summary judgment with respect to both counts, or, in the alternative, for leave to amend the consolidated complaints.  The court denied both motions after a hearing.

[7]  The motions in limine were directed to (1) evidence concerning use of the Pilot Point Section after 1997; (2) evidence concerning use of the Pilot Point Section that was ongoing for less than twenty years before 1997; (3) evidence related to a 1992 zoning ordinance enacted by the Town; and (4) evidence concerning a proposed way over the Pilot Point Section.

a full twenty years, subject to any other evidentiary objections made by the Town," and denied the remaining motions in limine. Pilot Point then filed an admission that, in light of the court's rulings on its pretrial motions, "[p]laintiffs' or their predecessors-in-interest's use of Surf Side Avenue between 1911 to 1997—even if inconsistent with the public's right of incipient dedication—was of insufficient duration prior to 1997 to warrant a finding that the public's incipient dedication right had lapsed by that time."

[¶9] The case proceeded to a bench trial on Count 1 on July 22, 2019. Pilot Point made an offer of proof pursuant to M.R. Evid. 103(a)(2), which the court accepted to preserve the excluded evidence in the trial record for appeal. The Town moved for judgment as a matter of law, M.R. Civ. P. 50(d), and Pilot Point made a second offer of proof. After considering the offer of proof and Pilot Point's admission, the court, relying on our decision in *Ocean Point Colony Trust, Inc.*, 1999 ME 152, ¶ 9, 739 A.2d 382, granted the Town's motion for judgment as a matter of law, concluding that "the purported structures identified . . . as having been in Surf Side Avenue between 1911 and September 1997 . . . do not exhibit ownership over the property in a manner that is inconsistent with the incipient dedication, and would not likely constitute adverse possession of the property." In addition to granting the

Town's motion for judgment as a matter of law on Count 1, the court's final written judgment also dismissed Count 2 of the consolidated complaints as unripe.

[¶10]  Following entry of the final judgment, Pilot Point moved for findings of law and proposed supplemental conclusions of law.  M.R. Civ. P. 52(b).  The court denied this motion.

[¶11]  Pilot Point timely appealed, M.R. App. P. 2B(c), and the Town timely cross-appealed, M.R. App. P. 2C(a).

## II.  DISCUSSION

A.    The Common Law Lapse Theory

1.    Timeliness of Count 1

[¶12]  The Town argues that Count 1 of the consolidated complaints, which sought a declaration that the Town's right to accept the incipient dedication of the Pilot Point Section had lapsed at common law, is time-barred by the six-year statute of limitations for civil actions.  *See* 14 M.R.S. § 752 (2020).  The Town's position is that any injury to Pilot Point arising from the Town's actions occurred in 1997 when it put the world on notice that it claimed a right in the Pilot Point Section.  *See* 23 M.R.S. § 3032.

[¶13]   We review de novo the question of whether a claim is time-barred by the applicable statute of limitations.  *Estate of Gray*, 2013 ME 29, ¶ 7, 61 A.3d 747.  "All civil actions shall be commenced within 6 years after the cause of action accrues and not afterwards . . . ."  14 M.R.S. § 752.  The purpose of statutes of limitation is "to provide eventual repose for potential defendants and to avoid the necessity of defending stale claims."  *Langevin v. City of Biddeford*, 481 A.2d 495, 498 (Me. 1984).  Generally, a cause of action accrues when "a claimant sustains a judicially cognizable injury" or when "discrete events make potential litigants aware of possible claims."  *In re George Parsons 1907 Trust*, 2017 ME 188, ¶¶ 15, 19, 170 A.3d 215 (quotation marks omitted).

[¶14]  The consolidated complaints were filed on January 26, 2018.  The Town takes the position that Pilot Point had six years from September 11, 1997—the date on which the Town recorded its section 3032 notice in the Registry of Deeds—to bring this declaratory judgment action.  However, the recording of the 1997 notice merely preserved the status quo by preventing— by statute—the deemed vacation of the Pilot Point Section, along with other proposed, unaccepted ways, and extended the Town's inchoate right to accept those ways for a period of twenty years.  23 M.R.S. § 3032.  The 1997 notice

did not create any new rights in the Town with respect to the Pilot Point Section beyond those that the Town already had at common law. *See Ocean Point Colony Trust, Inc.*, 1999 ME 152, ¶ 7, 739 A.2d 382 (holding that "section 3032(2) applies *only* to those incipient dedications that *have not lapsed pursuant to the common law*" (emphasis added)). The statutorily authorized 1997 notice does not have any real bearing on the question of whether the Town's common law right to accept the Pilot Point Section had lapsed *before that notice was filed*; therefore, the filing of that notice did not create Pilot Point's cause of action or start the running of a six-year limitations period.

[¶15] Uncertainty concerning the Town's inchoate right to accept the Pilot Point Section is an ongoing burden to the homeowners' property, and therefore the statute of limitations will not begin to run unless and until the Town formally accepts the Pilot Point Section. *See Britton v. Dep't of Conservation*, 2009 ME 60, ¶¶ 18-20, 974 A.2d 303; *Johnson v. Town of Dedham*, 490 A.2d 1187, 1189 (Me. 1985); *see also Igartua-de la Rosa v. United States*, 417 F.3d 145, 157-58 (1st Cir. 2005) (observing that a declaratory judgment "is a procedural device that provides a new, noncoercive remedy . . . in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy" (quotation marks omitted)).

Therefore, the trial court did not err in concluding that Count 1 was timely brought.

> 2. Merits of Count 1

> a. Legal Sufficiency of the 1997 Notice

[¶16]  Turning to the merits of Pilot Point's arguments, we first address the contention that the 1997 notice was legally insufficient to prevent the deemed vacation of the Pilot Point Section pursuant to section 3032 because it did not specifically list Surf Side Avenue or the Pilot Point Section thereof.

[¶17]  We view the evidence and every justifiable inference from the evidence in the light most favorable to Pilot Point, the party against whom judgment was entered. *Chapman v. Robinson*, 2012 ME 141, ¶ 9, 58 A.3d 1123; M.R. Civ. P. 50(d), (a).  "[W]e review legal questions of statutory interpretation de novo."  *Allied Res., Inc. v. Dep't of Pub. Safety*, 2010 ME 64, ¶ 11, 999 A.2d 940 (citations omitted); *see also State v. Conroy*, 2020 ME 22, ¶ 19, 225 A.3d 1011.  Section 3032(1-A) provides,

> A proposed, unaccepted way or portion of a proposed, unaccepted way laid out on a subdivision plan recorded in the registry of deeds prior to September 29, 1987 is deemed to have been subject to an order of vacation . . . if, by the later of 15 years after the date of the recording of the subdivision plan laying out the way or portion of the way or September 29, 1997, both of the following conditions have been met:

**A.** The way or portion of the way has not been constructed or used as a way; and

**B.** The way or portion of the way has not been accepted as a town, county or state way or highway or as a public, utility or recreational easement.

[¶18] The statute further provides,

The municipal officers of the affected municipality may except a proposed, unaccepted way or portion of a proposed, unaccepted way described in subsection 1-A from the operation of the time limitations of that subsection by filing, in the registry of deeds where the subdivision plan is recorded, a notice stating that the way or portion of the way is excepted from the operation of subsection 1-A for a period of 20 years from the filing of the notice.

23 M.R.S. § 3032(2).

[¶19] For such a notice to be effective, it "must be filed prior to the expiration of the time limitations of subsection 1-A," and the twenty-year period may be renewed for an additional twenty-year period "by the filing of a new notice within the preceding 20-year extension period." *Id.*

[¶20] Here, the notice was recorded in the Cumberland County Registry of Deeds on September 11, 1997, and there is no dispute that the notice was timely recorded. *Id.* § 3032(1-A), (2). The question is whether the notice satisfied the statutory requirement of "stating that the way or portion of the way is excepted from the operation of subsection 1-A for a period of 20 years from the filing of the notice." *Id.* § 3032(2).

12

[¶21]  The 1997 notice states, unequivocally, that

the Town Council, pursuant to [section] 3032(2), hereby extends for a period of twenty (20) years *all* proposed, unaccepted ways within the Town of Cape Elizabeth *except* those proposed, unaccepted ways as shown on the maps attached hereto as Exhibit A and denoted as U-7-1, U-7-2, U-7-3, U-7-4, that portion of U-7-5 as shown on said map, U-29-2 and U-29-5.

(Emphasis added.)

[¶22]  Because the notice articulates in plain language the Town's intent to extend for twenty years, pursuant to section 3032(2), "*all* proposed, unaccepted ways within the Town" (emphasis added), except the seven, which are not relevant to this case, that were specifically excluded, the court correctly determined that the 1997 notice was sufficient to satisfy the requirements of section 3032, thereby preventing the deemed vacation of the Pilot Point Section.[8]

---

[8]  Pilot Point's reliance on *Kraus v. Mich. Dep't of Commerce*, 547 N.W.2d 870, 875 (Mich. 1996), is misplaced.  *Kraus* was decided in the context of a different statutory framework and concerned whether a resolution that did not explicitly name the road in dispute "effect[ed] *manifest acceptance* of the offer to dedicate the road to public use" pursuant to a Michigan statute that "*required* each board of county road commissioners to take over all township highways and incorporate them into one county-wide highway system over a five-year period."  *Id.* at 874-75 (emphasis added).  Here, we are not concerned with whether the notice would have constituted effective acceptance because the Town has taken no steps to accept the dedication of the Pilot Point Section and may never do so.  The notice at issue operated only to prevent deemed vacation under section 3032 and extend the time within which the Town may accept the Pilot Point Section if it chooses to do so.

### b. Application of the Common Law Lapse Standard

[¶23] The thrust of Pilot Point's remaining argument with respect to Count 1 is that the court erroneously applied the common law standard for determining whether a dedication of a road or way for public use has lapsed. More specifically, Pilot Point contends that the trial court erred in declining to consider certain facts and circumstances as part of its lapse analysis and erred in determining that the evidence presented was insufficient as a matter of law to support a finding that the dedication of the Pilot Point Section had lapsed.[9]

[¶24] "At common law an incipient dedication must be accepted within a reasonable time or the right to accept that dedication will be lost." *Ocean Point Colony Trust, Inc.*, 1999 ME 152, ¶ 8, 739 A.2d 382. "Adverse possession of the incipiently dedicated way will cause the dedication to lapse, but mere non-use or use that is not inconsistent with the premise that the public may later open the path will not cause the incipient dedication to expire." *Id.*

---

[9] Pilot Point raises several arguments couched as assignments of error committed by the trial court on the issue of lapse that pertain to the scope of the dedication and, by extension, to the permissible scope of any future development by the Town should it ever accept the Pilot Point Section. These arguments proceed from the assumption that, if it ever accepts the Pilot Point Section, the Town is limited to developing it as a roadway for motor vehicle travel and may not create a walking trail or recreational space. As explained below, the issue of whether the Town may develop the Pilot Point Section for purposes other than motor vehicle travel is not ripe for review because the Town has not accepted, and may never accept, the Pilot Point Section. *See infra* ¶ 31. Therefore, we do not address Pilot Point's arguments on the issue of lapse to the extent they relate to whether the Town may develop the Pilot Point Section only as a roadway for motor vehicles if it ever accepts the dedication.

14

"[T]he public's right to accept the incipient dedication lapses when another person possesses the property and exhibits ownership over the property in a manner that is inconsistent with the incipient dedication and would likely constitute adverse possession of the property." *Id.* ¶ 9. Ultimately, "[t]he facts and circumstances of each case determine whether a reasonable time for acceptance has passed." *Id.*

[¶25] The trial court correctly concluded that the date on which the Town timely recorded its notice pursuant to section 3032 is a "flag post for determining whether vacation or lapse is the relevant doctrine."[10] As we observed in *Ocean Point Colony Trust, Inc.*, "section 3032(2) applies *only* to those incipient dedications that *have not lapsed* pursuant to the common law." *Id.* ¶ 7 (emphasis added). For the reasons carefully and correctly articulated by the trial court, if lapse occurred at all, it must necessarily have occurred before the relevant statutory deadline, here, September 29, 1997. *See id.*; 23 M.R.S. § 3032. After that deadline, the statutory process of vacation, either deemed or voluntary, displaces the common law lapse standard. Therefore,

---

[10] The statutory deadline for filing a notice in the registry of deeds to prevent the deemed vacation of Surf Side Avenue was September 29, 1997. 23 M.R.S. § 3032 (2020). The Town's notice was filed on September 11, 1997. *See supra* ¶ 6. Although the court correctly noted that the notice was timely filed, it misstated the filing date as September 8, 1997, the date of the Town Council's vote to extend the Town's right to accept the paper streets. *See id.* This error does not affect our analysis because the record clearly reflects that the notice was recorded before the statutory deadline.

the trial court did not err in determining that evidence of inconsistent use of the dedicated land after the date of the Town's timely recorded notice is not relevant to the lapse analysis.

[¶26]  After the court refused—properly—to consider evidence of inconsistent use after September 1997, but before trial, Pilot Point filed an admission that stated, "Plaintiffs' or their predecessors-in-interest's use of Surf Side Avenue between 1911 to 1997—even if inconsistent with the public's right of incipient dedication—was of insufficient duration prior to 1997 to warrant a finding that the public's incipient dedication right had lapsed by that time."  Therefore, Pilot Point acknowledged that it was unable to show that the dedication lapsed at common law.

[¶27]  The admission notwithstanding, when the proffered evidence is viewed in the light most favorable to Pilot Point, *Chapman*, 2012 ME 141, ¶ 9, 58 A.3d 1123, the offer of proof submitted at trial could demonstrate only that Pilot Point might be able to establish that a brick stairway and fenced garden area existed in the Pilot Point Section for a legally sufficient length of time. These uses are not inherently inconsistent with the premise that the public may later open the street.  *Ocean Point Colony Trust, Inc.*, 1999 ME 152, ¶ 8, 739 A.2d 382; *see also Bartlett v. Bangor*, 67 Me. 460, 466 (1878) (holding that

"placing upon the land buildings or other *permanent obstructions to all possible travel over it*" may cause an incipient dedication to lapse, but "using the land for pasturage, or the growth of crops, or other purpose, which does not indicate an intention that it shall never be used as a street, will not have that effect" (emphasis added)).

[¶28]  The court did not err in its application of the common law lapse standard, *Ocean Point Colony Trust, Inc.*, 1999 ME 152, ¶¶ 7-9, 739 A.2d 382, or in determining that the evidence—even accepting Pilot Point's offer of proof as true—was insufficient as a matter of law to establish that the Town's right to accept the dedication of the Pilot Point Section had lapsed at common law.

B.    Ripeness of Count 2

[¶29]  Pilot Point also contends that it was error for the court to dismiss Count 2 without prejudice as unripe for review "because it presents a concrete legal problem, and because the continuing threat that an impermissible public trail could be built by the town at any time causes a direct, immediate, and continuing impact on the use, value and marketability of the [h]omeowners' property."

[¶30]  Ripeness is a question of law that we review de novo, and it involves a two-part inquiry: (1) whether the issues are fit for judicial review, and (2) whether hardship to the parties will result if the court withholds review.  *Marquis v. Town of Kennebunk*, 2011 ME 128, ¶ 18, 36 A.3d 861; *see also Blanchard*, 2019 ME 168, ¶ 20, 221 A.3d 554.

[¶31]  A declaratory judgment concerning the permissible scope of any hypothetical, future development of the Pilot Point Section would be only an advisory opinion because the Town has taken no formal, concrete steps toward accepting or developing the Pilot Section and may never do so.  *See Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) ("For a declaratory judgment to issue, there must be a dispute which calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." (quotation marks omitted)); *Mass. Delivery Ass'n v. Coakley*, 769 F.3d 11, 16 (1st Cir. 2014) (observing that there must be "sufficient immediacy and reality to warrant the issuance of a declaratory judgment" (quotation marks omitted)).  Moreover, Pilot Point has not shown that it will be harmed if review were withheld until such time as the Town actually accepts and takes concrete steps toward developing the Pilot Point Section.  *See Clark*, 2014 ME 33, ¶ 20, 87 A.3d 712; *Johnson v. City of Augusta*, 2006 ME 92, ¶¶ 9-10, 902

A.2d 855. Because this issue is speculative and turns on facts that could not be before the court, because those facts do not exist even now, rendering a declaratory judgment on Count 2 would only invite further litigation if the Pilot Point Section were ever accepted—the Town would argue its use was within the scope of what was deemed permissible, and Pilot Point would argue that it was not. *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1380 (10th Cir. 2011) (stating that "[a] declaratory judgment that would not have practical consequences without later additional litigation is not proper").

[¶32]    Therefore, the court did not err or abuse its discretion in dismissing without prejudice Count 2 of the consolidated complaints as unripe for judicial review. *Clark*, 2014 ME 33, ¶ 8, 87 A.3d 712; *see also Bank of N.Y. v. Dyer*, 2016 ME 10, ¶ 6, 130 A.3d 966 ("We review [a] dismissal without prejudice for an abuse of discretion.").

The entry is:

Judgment affirmed.

―――――――――――

David A. Soley, Esq., Glenn Israel, Esq., and James G. Monteleone, Esq., Bernstein Shur, Portland, for appellants Pilot Point, LLC, et al.

Durward W. Parkinson, Esq., Bergen & Parkinson, LLC, Kennebunk, for cross-appellant Town of Cape Elizabeth

Business and Consumer Docket docket number RE-2018-05 and RE-2018-06
FOR CLERK REFERENCE ONLY